860 P.2d 618

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Joseph Craig NEWMAN, Defendant-Appellant.**

**No. 19690.**

Supreme Court of Idaho,
Pocatello, April 1993 Term.

July 8, 1993.

Rehearing Denied Oct. 26, 1993.

Whittier, McDougall, Souza, Murray and Clark, Pocatello, for appellant. Bryan K. Murray argued.

Larry EchoHawk, Atty. Gen. and Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent. Ned Fuller, Legal Intern, argued.

SILAK, Justice.

Joseph Craig Newman pled guilty to four felony counts related to the possession and distribution of marijuana. The district court imposed sentences which amounted to a fixed five-year period of confinement. Newman challenges his sentences on two grounds: (1) during the sentencing hearing the prosecutor made unsworn and unsubstantiated allegations about the extent of Newman's prior drug dealings; and (2) the district court abused its discretion by imposing an unduly harsh sentence. We find no error with respect to the prosecutor's unsworn statements during the sentencing hearing. However, because we are unable to review the district court's sentencing discretion based on the record before us,

we vacate the sentences imposed and remand for resentencing.

## FACTS AND PROCEDURAL BACKGROUND

On December 17, 1990, Newman and his wife, Tina Newman, sold a bag of marijuana to four individuals for $90 at their home in Caribou County, Idaho. The police, having received information that the individuals were going to purchase the marijuana, observed the individuals leaving the Newmans' residence and arrested them shortly thereafter. These individuals admitted having purchased the marijuana from the Newmans, and informed the officers that a substantial quantity of marijuana remained in the Newmans' possession. The police subsequently arrested the Newmans and applied for a warrant to search their residence and vehicles. Newman initially denied the alleged drug transaction, but after his wife confessed, Newman agreed to show the officers where he had stored approximately one pound of marijuana. Further search led to the discovery of a marijuana pipe, a scale, and a sawed-off shotgun. Newman was charged with one count of delivery of a controlled substance, I.C. § 37–2732(a)(1)(B); one count of possession of a controlled substance with intent to deliver, I.C. § 37–2732(a)(1)(B); one count of possession of more than three ounces of marijuana, I.C. § 37–2732(e); and one count of failure to affix tax stamps, labels or other indicia on a controlled substance, I.C. §§ 63–4205 and 63–4207. Charges were also filed against Tina Newman, and the cases were consolidated.

Pursuant to a plea agreement, Newman pled guilty to all four counts. The state agreed to reduce the charges against Tina Newman so that she might receive probation. The sentencing judge conducted separate sentencing hearings for Newman and his wife. After sentencing Tina Newman, and receiving a presentence investigation report (PSI) on Newman, the district court conducted Newman's sentencing hearing. At that hearing, the prosecutor made the following statements:

But in any case, your Honor, I think, as the court can take knowledge of Tina Newman's own sentencing, Mr. Newman has been engaged in the conduct of dealing with drugs for a period of ten years. And, that's been his—basically his income for around ten years. He's a drug dealer and that's what he does for a living. That's how he buys his 1987 Pontiac Fire Bird or whatever it was. How he buys his vans. How he buys his mobile homes and that's what he does for a living. He's a drug dealer.

Newman's counsel did not object to, or move to strike, the prosecutor's statements, nor request that the state be required to produce evidence supporting the allegations. In his rebuttal argument, Newman's counsel did respond to the prosecutor's statements by stating that the prosecutor's allegation that Newman earned his living as a drug dealer was not supported by Newman's PSI. He further argued that while the record demonstrated that Newman used drugs extensively, and that he would buy and sell drugs among his friends to facilitate his drug use, his primary involvement with drugs was as a user, not as a dealer. He also emphasized the presentence investigator's comment that law enforcement officials would have known if Newman were a major importer of drugs into the area, and asserted that the PSI did not indicate that he was. Finally, defense counsel argued that the Newmans' lifestyle did not indicate that they received a tremendous amount of income from drug sales.

Prior to sentencing Newman, the district judge stated that although he believed Newman had sold drugs prior to the incident which led to his arrest, the sentences imposed would be only for the four charges to which Newman had pled guilty. The court then proceeded to impose the following sentences: five years fixed for delivery of a controlled substance; a unified five years with three years fixed for possession of a controlled substance with intent to deliver; a unified five years with three years fixed for possession of more than three ounces of marijuana; and a unified

three years with one year fixed for failure to affix tax stamps, labels or other indicia to controlled substances. Because the court ordered that the sentences run concurrently, Newman's sentence amounted to a fixed five-year period of confinement.

### ISSUES

Newman raises two issues on appeal: (1) whether the prosecutor's unsworn and unsubstantiated allegations during the sentencing hearing about prior drug dealings by Newman warrant vacation of Newman's sentences and remand for resentencing; and (2) whether the district court abused its discretion by sentencing Newman to a fixed five years in prison.

### ANALYSIS

█ 1. **Unsworn and Unsubstantiated Statements by the Prosecutor During the Sentencing Hearing.** Newman asserts that the prosecutor's unsworn and unsubstantiated statements during the sentencing hearing about the extent of Newman's prior drug dealings constitute reversible error. Whether it is erroneous for a prosecutor to make unsworn and unsubstantiated statements during sentencing is an issue which has been addressed previously by this Court. In *State v. Coutts*, 101 Idaho 110, 609 P.2d 642 (1980), the prosecutor remarked during sentencing that the car Coutts was driving at the time of his arrest was allegedly a stolen vehicle, and that three independent sources had supplied the prosecutor with information indicating that Coutts had previously beaten and shot his wife. These hearsay statements by the prosecutor in *Coutts* were neither sworn

nor substantiated by any evidence in the record. When defense counsel objected to the prosecutor's statements, the trial court overruled the objection stating that defense counsel would have an opportunity to respond. On appeal, Coutts asserted that the prosecutor's reference to the alleged incidents was a presentation of unsworn evidence contrary to I.C. §§ 19–2515(a) and 19–2516.[1] This Court denied Coutts's appeal, holding that:

> *[I]n the absence of an explicit request for the formal hearing contemplated by I.C. § 19–2516,* the court may reach its sentencing decision by receiving the unsworn formal statements presented by both sides, together with the presentence report and arguments of the respective counsel.

*Coutts*, 101 Idaho at 113, 609 P.2d at 645.

Like Coutts, Newman did not make any request for the formal hearing provided by I.C. § 19–2516, "but participated without objection in the more informal type of hearing conducted by the sentencing judge." *Coutts*, 101 Idaho at 113, 609 P.2d at 645. Therefore, as in *Coutts*, it was not error for the trial court to reach its sentencing decision by receiving the unsworn statements and arguments of both counsel. This holding is consistent with this Court's observation that "the sentencing judge is presumably able to ascertain the relevancy and reliability of the broad range of information and material which may be presented to it during the sentencing process and to disregard the irrelevant and unreliable." *State v. Pierce*, 100 Idaho 57, 58, 593 P.2d 392, 393 (1979).

1. These sections provide as follows:

**19–2515. Inquiry into mitigating or aggravating circumstances—Sentence in capital cases—Statutory aggravating circumstances—Judicial findings.**—(a) After a plea or verdict of guilty, where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral or written suggestion of either party that there are circumstances which may be properly taken into view either in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily, at a specified time, and upon such notice to the adverse party as it may direct.

**19–2516. Inquiry into circumstances—Examination of witnesses.**—The circumstances must be presented by the testimony of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken by a magistrate of the county, out of court, upon such notice to the adverse party as the court may direct. No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this and the preceding section.

418

**2. Abuse of Sentencing Discretion.** Newman asserts that the district court abused its sentencing discretion by imposing a sentence which was unduly harsh, and therefore unreasonable. To determine whether a court has abused its sentencing discretion, we conduct an independent review of the record, focusing on the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Broadhead,* 120 Idaho 141, 143, 814 P.2d 401, 403 (1991), *overruled on other grounds by State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992); *State v. Wolfe,* 99 Idaho 382, 384, 582 P.2d 728, 730 (1978). Otherwise stated, our task in reviewing a sentence is to determine whether, considering (1) the protection of society, (2) deterrence of the defendant and others, (3) the possibility of the defendant's rehabilitation, and (4) punishment or retribution for the defendant, the sentence is excessive under any reasonable view of the facts. *Broadhead,* 120 Idaho at 146, 814 P.2d at 406. "[W]e will not substitute our view for that of a sentencing judge where reasonable minds might differ." *Id.* (quoting *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982)). We consider the fixed portion of the sentence imposed to be the term of confinement for the purpose of appellate review. *Broadhead,* 120 Idaho at 146, 814 P.2d at 406; *State v. Kysar,* 116 Idaho 992, 999, 783 P.2d 859, 866 (1989). Thus, we must determine whether Newman's sentences, which amount to a fixed period of five years' confinement, are unduly harsh in light of his character, the nature of his offense, and the goals of sentencing, i.e., protection of society, deterrence of future crimes, rehabilitation and retribution. *Broadhead,* 120 Idaho at 146, 814 P.2d at 406.

The sentences imposed by the district court amount to the maximum sentence Newman could have received for each one of these offenses. Newman's PSI reveals that he has no prior felony drug offenses on his criminal record, and that he has one prior felony conviction for attempted aggravated assault in connection with a failed drug transaction in Arizona, for which he received a sentence of four and one-half years in prison, with half of that period fixed.

Our determination whether Newman's sentences are excessive in light of the governing criteria is made extremely difficult because the sentencing judge did not articulate at all his reasoning regarding the accomplishment of the sentencing objectives. As a result, the record does not reveal any reasoned basis for the discretion exercised by the sentencing court. *State v. Joslin,* 120 Idaho 462, 464, 816 P.2d 1019, 1021 (Ct.App.1991). We are mindful of, and reaffirm, the well-settled rule previously established by this Court in *State v. Osborn,* 104 Idaho 809, 810, 663 P.2d 1111, 1112 (1983), that "while the setting forth of reasons for the imposition of a particular sentence would be helpful, and is encouraged, it is not mandatory." *See also State v. Nield,* 106 Idaho 665, 666, 682 P.2d 618, 619 (1984). However, in *Osborn* the Court also noted that "[a]lthough the trial court failed to make specific statements regarding its reasons for imposing the sentence, a review of the record adequately reflects his reasoning." *Osborn,* 104 Idaho at 810, 663 P.2d at 1112. In this case, however, inadequacies of the record render it impossible for us to discern the district court's reasoning in imposing these sentences.

The portion of the record on appeal which contains information about Newman's character and the nature of his offenses consists of: (1) the Arizona PSI submitted to the district court, and (2) the transcript of Newman's sentencing hearing. The PSI was prepared for Newman's sentencing in the Arizona case, not for Newman's sentencing in this case. The PSI reveals that Newman has no prior felony drug offenses on his criminal record, and that his only prior felony is the attempted aggravated assault conviction in Arizona. An addendum to the Arizona PSI notes that Newman had been charged with the four felony counts in this case, but the report does not include any other information related to the offenses underlying this case. The report contains few facts from which this Court on appeal can assess the nature of Newman's character. The report

contains no statements from witnesses regarding Newman's character, and no assessment of his character by the presentence investigator, nor does the report contain any sentencing recommendation by the investigator. The report does give a sketchy account of the role Newman allegedly played in the incidents underlying the Arizona felony. The PSI investigator noted, however, that "[t]he extent of the defendant's involvement in the instant offense varies a great deal depending on the source of the information[,]" and the presentence investigator did not attempt to draw any conclusions on that issue. Having reviewed the PSI submitted to the district court, we conclude that the information contained therein is inadequate to constitute the basis of an assessment of Newman's character on appeal.

The transcript of Newman's sentencing hearing likewise fails to reveal sufficiently the nature of Newman's character and his offenses. Newman's sentencing hearing consisted of arguments presented by counsel and a brief statement by Newman. No witnesses testified at the hearing. The district court did not comment regarding its understanding of the extent of Newman's involvement in the attempted drug transaction in Arizona. Counsel for the state and for Newman presented very different portrayals of Newman's involvement with drugs. As mentioned above, the prosecutor alleged that Newman had been dealing drugs for a living for ten years. The prosecutor implied that his allegation was supported by information presented during Tina Newman's sentencing hearing. However, the transcript of Tina Newman's sentencing hearing has not been included in the record on appeal. Although the district court stated that it did not believe this was the first time Newman had sold drugs, the court made no statements with respect to the extent of Newman's prior drug dealings, or with respect to any other attributes of Newman's character.

In conclusion, because we are unable to independently assess the nature of Newman's character based on the record before us, we are unable to review the reasonableness of the sentences imposed in view of Newman's character, the nature of his offenses and the four sentencing goals. Accordingly, we vacate the sentences imposed and remand for resentencing. *See also State v. Joslin,* 120 Idaho at 464, 816 P.2d at 1021.

## CONCLUSION

Based on the facts and reasoning set forth above, we conclude that the prosecutor's unsworn and unsubstantiated statements during the sentencing hearing did not invalidate that proceeding. However, we vacate Newman's sentences and remand for resentencing because we are unable to review the district court's exercise of discretion on the record before us.

McDEVITT, C.J., and JOHNSON and TROUT, JJ., concur.

BISTLINE, Justice, specially concurring.

The interested reader will readily see that Justice Silak had become well acquainted with the underlying facts, and expresses genuine concern as to the reasonableness of the sentences which were imposed on Mr. Newman. That may be concern which does not go unshared. For my part, were Judge Transtrum to simply ameliorate the severity of the sentences imposed, which relate to the drug dealing in Idaho, that would be a matter wherein I could and would readily abide by his decision. While it is true that no witnesses testified, it is equally true that the trial court, Judge Transtrum, has had considerable experience, by reason of which he is an extremely capable trial judge. Moreover, as was said in a musical, he knows the territory and he knows people.

As the scenario unfolded in the record made in the district court, it became readily apparent that Joseph Newman was born in southeastern Idaho, attended high school and from there finished his early education by completing a G.E.D. at Idaho State University. There was not much reason for the amassing of greater detail than that. The controversy presented to Judge Transtrum involved ascertaining the

charges laid against Newman by the prosecutor, and the degree of his culpability in becoming an alleged drug dealer, and apparently to an extent an addict. Newman's narrative history laid before the court by his attorney was implicitly done without objection by the prosecutor or by the court. Most impressive to my mind was Newman's past history, admittedly in dealing some drugs, admittedly involving his wife, and thereafter having far more concern for her welfare and future than he did for himself. Pertinent portions of the reporter's transcript need to be disclosed; those excerpts speak for themselves and are found in Appendix A, attached. In particular it is important to observe that Newman was exceedingly frank and forthright. If ever a man displayed a contriteness in a court setting, that person was Newman.

Although I do not wholly agree with other members of this Court, for my part, to know the district judge who in this case was "the court" is to rely upon his history, his ability, and his dispassionate reasoning ability. It is true, as noted in Justice Silak's well-stated opinion, that there were different portrayals presented to the court, i.e., that of the prosecution and that of Newman's attorney on behalf of his client. Such was entirely proper and wholly unchallenged. Moreover, it shortened the court hearing by the elimination of extensive cross-examination.

To the contrary, the prosecutor's summation presented to the court was, perhaps, a bit dramatic, which readers may determine for themselves. That there was no jury is to the credit of Newman and his attorney in confessing to Newman's drug involvement. A jury was not necessary. The court, both counsel, and Newman, were well-aware of Newman's past drug addiction, drug dealing, and his apparently complete turn about. Newman, through his attorney, readily admitted to his involvement and how it engulfed him and his wife, adversely affecting also the lives of their children. Such fair-minded complacency saved the county from making unnecessary expenditures of taxpayer dollars.

Such being the state of the record as it came briefly before us, my intended vote initially was to affirm the district court. However, on further reflection, and then further review of Justice Silak's opinion, and also having in mind that Judge Transtrum is now being requested to reconsider the sentence imposed, it is in order that my views be laid before a candid public. Presently my thoughts are simply stated. Whether so intended or not, it seems quite clear that the sentences imposed may have appeared harsh. To my mind that could not have been other than very impressive on Newman, he already being under equally severe sentences elsewhere than in Idaho. Clearly, if ever a person could have more incentive to reform and play it straight than Newman, I am unaware of such. If Judge Transtrum's sentencing of Newman was in order to motivate Newman into fulfilling the terms of his incarceration this one member of the Court would not be surprised. Nor would it be a surprise were he to now extend leniency to Newman in reimposing sentences which are less harsh than those first imposed.

## APPENDIX A.

THE COURT: Unless counsel wishes, we'll continue on through the noon hour. I intended to take State -vs- Joseph Craig Newman next. Case No. 90-227, State of Idaho -vs- Joseph Craig Newman. Let the record show that Mr. Newman is in court personally with his attorney, Mr. Bryan Murray. Mr. Eldredge, what's your role here today?

MR. ELDREDGE: Your Honor, he's been charged in three different states and I'm representing him in two of those states and I'm just here to observe.

THE COURT: All right. I was going to say, if he's employed private counsel, I'll be happy to discharge the employed private counsel, Public Defender.

MR. ELDREDGE: No, Bryan is fine.

THE COURT: Okay. Officially this matter is before the court on Defendant's motion for a speedy trial or to dismiss. And, upon his notice that he wants to withdraw

a prior written plea of guilty. I'm advised by counsel, however, there have been some negotiations between Defendant's counsel and the State. Mr. Murray, would you like to make a record on that please?

MR. MURRAY: Yes, your Honor. My client at this time is willing to continue with his plea of guilty to the charges before this court. That is based under the understanding that his wife will be placed on probation. He understands this court may do that for reasons totally unconnected with his plea before the court. He felt a tremendous weight or responsibility for the things and problems he's caused with his wife's life and wants her to have the best opportunity to get on with her life. He understands that our agreement with the State is not binding on this court in that matter, and that's a totally separate matter. When we entered our plea of guilty previously, that was a provision that was included, based on promises that had been made by the Department of Narcotics and the State of Idaho, knowing it's this court's ultimate decision of what should take place.

THE COURT: All right. For the record, this court is not bound by any conversations with the Department of Narcotics, Department of Law Enforcement. I was unaware of any of those things. The only agreement before the court was placed upon the record by this court. It did not involve the lack of incarceration of Tina Newman. I will advise you at this time that it is the intention of the court to alter the prior sentence imposed in the case of State -vs- Tina Newman. For the reason that the court had imposed a sentence and retained jurisdiction for a period of time. The Department of Corrections, for whatever reason, have not accomplished that part of the sentence, and the hundred and twenty days are now up. It's the intention of this court, following this matter, to modify, if you will, the sentence against Mrs. Newman to one of probation. With that explanation and understanding, do you wish to proceed with your client at this time to the plea of guilty that's been previously entered?

MR. MURRAY: That's correct, your Honor.

THE COURT: All right, do you wish to be heard on the motions?

MR. MURRAY: Your Honor, at this point there would be no need for the motion, so we will withdraw his motion to withdraw his plea of guilty that had been entered before the court.

THE COURT: The motion is granted.

MR. NELSON: Your Honor, I believe there's another motion made by the Defendant for a speedy trial.

THE COURT: Yes. How should we proceed on that?

MR. MURRAY: By maintaining the pleas of guilty that point would become moot, your Honor, and that would be withdrawn.

THE COURT: All right. We'll proceed at this time on the basis that there has been a plea of guilty entered. For the record, that was filed July 5th, 1991, along with a so called Rule 11 questionnaire, a guilty plea questionnaire that's been filled in by the Defendant and filed with the court. At this time, counsel, is it your—I have received a copy of a pre-sentence report made in the State of Arizona, with an addendum, dated 4/30/91. It was prepared by the State of Arizona for the purposes of sentencing there on their case, CR 31650 in the County of Pima. Would counsel like to make a record how they wish to proceed in this now?

MR. NELSON: Your Honor, two things, if I could. It's my understanding that on the pre-sentence report, the first page on that actually is an addendum to the original report, but it's my understanding that the Arizona presentence report would be accepted by the Defendant as the presentence report required under Idaho Law, and they would waive any other—further pre-sentence report and request that the Defendant be sentenced upon the charges today. And, that the court could consider this pre-sentence report as a substitute for any Idaho pre-sentence report. In that regard, the Defendant has been confined in

Arizona in the Arizona State Penitentiary, at Tucson, since this pre-sentence report, either in that prison or in another prison within Arizona during that period of time. Is that correct, Mr. Murray?

MR. MURRAY: That is correct. I believe the date was May 16th that he has been in custody.

MR. NELSON: One thing, your Honor, just for the record, purposes of the record, to make sure there is no misunderstanding. We would request that the Defendant be specifically advised of the rights that he is giving up by entering a plea of guilty and that he be required to enter verbal plea of guilty to the charges.

THE COURT: Very well. Any objection to that, Mr. Murray?

MR. MURRAY: No, your Honor.

THE COURT: Mr. Newman, if you would stand. Mr. Newman, you have filed—originally you entered a plea of not guilty and then you filed a written plea of guilty. I want to advise you of some of your rights in this court that you were advised of at the time of your original arraignment. I want to go through them with you. Upon a plea of not guilty you have the following rights. That is a presumption that you are innocent until proven guilty. The State must prove you're guilty beyond a reasonable doubt. You're entitled to a speedy and public trial by jury. You're entitled to testify on your own behalf, if you wish. To call witnesses and present evidence on your own behalf and to see, hear and confront and question all witnesses called to testify against you. You're entitled to the subpoena process and power of this court to compel attendance of witnesses, and you have the privilege against compulsory self-incrimination; that is, you cannot be required to testify against yourself. By entering a plea of guilty, you waive your right to trial. You waive your right to have your guilt proven beyond a reasonable doubt. You waive your right against self-incrimination. You waive your right to confront the witnesses against you. You also waive any defenses

you have to the charges filed to which you have plead guilty. And, if you are now on probation by an order of this court or any other court, even in a different state, your plea of guilty here may cause you to be further prosecuted under that order. Do you understand these rights, Mr. Newman?

MR. NEWMAN: Yes, sir.

THE COURT: Do you have any questions about any of them?

MR. NEWMAN: No, sir.

THE COURT: The written plea that was filed with the court July the 5th, prepared, I assume, by Mr. Murray, and it shows June 23rd, 1991, signature Joseph Craig Newman. Do you recall that written plea and is that your signature?

MR. NEWMAN: Yes, sir.

THE COURT: Along with that was a paper with some 26 questions or statements, responded to in longhand. Do you recall filling that out, Mr. Newman?

MR. NEWMAN: Yes, sir.

THE COURT: And, it bears the signature 6/23/91, Joseph Craig Newman on the front. And, no signature or date on the back. Would that have been your signature?

MR. NEWMAN: Yes, sir.

THE COURT: Did you understand all those questions when you filled it out?

MR. NEWMAN: Yes, sir.

THE COURT: At that time had you taken any alcohol, drugs or medication within 48 hours before that?

MR. NEWMAN: No.

THE COURT: All right. I ask that to determine that you were in fact able to understand and read what you were filling in and signing. Are you satisfied with the services of your attorney, Mr. Murray?

MR. NEWMAN: Yes, sir.

THE COURT: Question 15 on that questionnaire says, "Has any person threatened you or done anything to make you enter this plea against your will?" And, you wrote, "No," crossed that out and wrote,

"Yes." Would you explain that to me? Do you have a copy of it there?

MR. MURRAY: I do, your Honor. Your Honor, the—

MR. NEWMAN: No person threatened me, your Honor. I think I might have wrote yes there because Number 16, I got them mixed up a little bit when I filled them out.

THE COURT: All right, and 16 says, "Has any person promised you will receive any special sentence, reward, favorable treatment or leniency with regard to the plea you are about to enter?" You've written, "Yes," and indicated, "The State of Idaho." Would you explain that to me please?

MR. NEWMAN: Yes, sir, the State, I think it was—

MR. MURRAY: Your Honor, that was the agreement that we addressed earlier here before the court about his wife's probation. We realize that was not binding on the court, but it was an agreement on which he was entering his plea of guilty.

THE COURT: Okay.

MR. NEWMAN: Modified by certain things, like the State of Wyoming and Idaho.

THE COURT: All right.

MR. NELSON: Your Honor, you may want to cover Number 21 also.

THE COURT: 21 is, "Do you disagree with any statement in the prosecuting attorney's information?" And, you've written, "Yes," there.

MR. NEWMAN: Facts and charges against me, your Honor.

THE COURT: Okay. These are the charges you now are prepared to enter a plea of guilty to?

MR. NEWMAN: I'm agreeing to the charges.

THE COURT: All right. How old are you, Mr. Newman?

MR. NEWMAN: 35.

THE COURT: And, what year in schooling have you finished?

MR. NEWMAN: I got my G.E.D. at Highland High School. I.S.U. is when I finished my G.E.D.

THE COURT: Do you have any difficulties in reading and understanding the English Language?

MR. NEWMAN: No, sir.

THE COURT: So, you were able to read over both the guilty plea and the questionnaire you filled out, were you?

MR. NEWMAN: Yes, sir.

THE COURT: Have you gone over the Prosecuting Attorney's Information with your attorney?

MR. NEWMAN: Yes, sir.

THE COURT: Do you understand the charges against you?

MR. NEWMAN: Yes, sir.

THE COURT: I advised you at the initial arraignment on this that the maximum but possible penalty prescribed by statute for these offenses are: On Count I, that is of delivery of a controlled substance, up to five years imprisonment and a fine of $15,000.00 or both. Count II, possession of a controlled substance with intent to deliver, up to five years in prison, $15,000.00 or both. Count III, possession of a controlled substance, marijuana in excess of three ounces, up to five years imprisonment with a fine of $10,000.00 or both, either or both. Count IV, that of possession of a controlled substance, marijuana, without having affixed the appropriate tax stamp, the sentence is up to five years imprisonment with a fine of $10,000.00, either or both. Now, do you understand the possible penalties that are incurred, if you enter a plea of guilty?

MR. NEWMAN: Yes, sir.

THE COURT: At this time do you wish a delay, Mr. Murray, before we go into the taking of a plea?

MR. MURRAY: No, your Honor.

THE COURT: All right. Mr. Newman, as to Count I, that on or about the 17th day

of December, 1990, in the County of Caribou, State of Idaho, you unlawfully delivered a controlled substance, to wit: Marijuana. Do you understand that charge?

MR. NEWMAN: Yes, sir.

THE COURT: To that charge do you plead not guilty or guilty.

MR. NEWMAN: Guilty.

THE COURT: As to Count II, that on or about the 17th day of December, 1990, in the County of Caribou, State of Idaho, you unlawfully possessed a controlled substance, to wit: Marijuana, with intent to deliver aforesaid substance. Do you understand that charge?

MR. NEWMAN: Yes, sir.

THE COURT: To that charge do you plead not guilty or guilty?

MR. NEWMAN: Guilty.

THE COURT: Count III, Defendant on or about the 17th day of December, 1990, in Caribou County, Idaho, possessed controlled substance, Marijuana in an amount in excess of three ounces. Do you understand that charge?

MR. NEWMAN: Yes, sir.

THE COURT: To that charge do you plead not guilty or guilty?

MR. NEWMAN: Guilty.

THE COURT: Count IV, that on or about December 17th, 1990, you possessed a controlled substance without having affixed the appropriate tax, in violation of the illegal drug tax act, in Caribou County, Idaho, substance, to-wit: Marijuana, do you understand that charge?

MR. NEWMAN: Yes, sir.

THE COURT: To that charge do you plead not guilty or guilty?

MR. NEWMAN: Guilty.

THE COURT: Mr. Newman, do you claim at this time or believe that your constitutional rights have been violated in any way by any person?

MR. NEWMAN: No, sir.

THE COURT: Are you satisfied with the advice your attorney has given you in connection with these charges?

MR. NEWMAN: Yes, sir.

THE COURT: Mr. Murray, do you have any reservations about allowing your client to plead guilty under these conditions?

MR. MURRAY: No, your Honor.

THE COURT: Do you believe that you have accomplished what is required of you as an attorney in regard to these charges, such as investigating or any motions to suppress evidence or anything such as this?

MR. MURRAY: Yes, your Honor—

THE COURT: Do you believe that your client understands what's going on here today?

MR. MURRAY: Yes, he does.

THE COURT: The court finds that the Defendant understands the charges brought against him. He understands the punishment that may be imposed. He understands the consequences of a plea of guilty, and I find that the plea was voluntarily and knowingly made after consulting with counsel. Now, Mr. Murray, do you wish to stipulate to acceptance of the pre-sentence report from the State of Arizona, a copy of which has been delivered to me and to you and Mr. Nelson, in lieu of any pre-sentence report or investigation to be done by the State of Idaho?

MR. MURRAY: Yes, Your Honor. We would only have two documents that we would like to submit to the court in addition to that. One is a random drug screening record of what has taken place in prison where my client has been residing, and the other is a student record for the studies that he is doing while he is incarcerated in Arizona.

THE COURT: Mr. Nelson, do you have copies of those?

MR. NELSON: No, your Honor. I could look at them real quickly.

THE COURT: Mr. Bailiff, if you would hand those to Mr. Nelson.

MR. NELSON: I have no objection to those, your Honor.

THE COURT: Very well, they will be received as part of the record in this case and attached as an addendum to the presentence report from Arizona.

MR. NELSON: Your Honor, one thing on that presentence report, your Honor. If it could be inquired as to the Defendant, because I don't think it's been brought out in the report itself. On Page two of the sentence of the court in Arizona, which is about half way through that packet. It says, Superior Court of Arizona, Pima County, Tucson, Dated June 3rd, 1991, on Page two it indicates that the court considered as an aggravated factor the Defendant's prior felony conviction. May be that should be clarified, your Honor, as to what that exactly is.

THE COURT: I'm not sure I find that.

MR. NELSON: May I approach the bench, your Honor?

THE COURT: Yes. Oh, all right. Thank you. Do you have that, Mr. Murray?

MR. MURRAY: I do, your Honor. I could explain that to the court.

THE COURT: Very well. Excuse me. Do you wish to proceed into a sentencing phase at this time or do you wish a delay in sentencing?

MR. MURRAY: We're willing to proceed, your Honor.

THE COURT: Very well, Mr. Newman, do you understand that?

MR. NEWMAN: Yes, sir.

THE COURT: All right. You can proceed, Mr. Murray. You can present what you wish to the court to be considered in mitigation.

MR. MURRAY: Thank you, your Honor. First in response to the questions by the State's Counsel, the Arizona court did take into consideration these changes because at the time they did those sentencings, my client had indicated his entry of a plea of guilty to these charges and had cooperated with the police and made lengthy statements to the police concerning his culpable conduct. And, they did weigh those factors and take that into consideration in giving him his sentence in Arizona. Your Honor, in reference to the report that was filed with the court in Arizona. Since that was filed my client has been incarcerated and so it is very current as to what has taken place in his life. It reviews on that first part, the addendum, the first and second pages, the exact charges that have been pending before this court here. Further, your Honor, it goes through my client's life history, and basically explains how as a young man he struggled in school a bit, but how he pulled himself up by his boot straps and continued and got his G.E.D. How later he went to work as a oil field worker. Working in the oil fields, your Honor, it was good work, but very hard work with very hard people. While working in the oil fields he met some people who were pretty hard and pretty coarse and that's where he came into his first contact with anybody who used or was involved in the drug business. While working there, your Honor, *he broke his back in an accident and has had serious medical problems since that time. It put him off of work and being off work his income dropped dramatically and it became a very difficult thing in his life. It affected his self esteem, his ability to support his family, ability to support his wife and the children that they have, your Honor.* And, has been very difficult for him in his life. He realizes that is no excuse for the changes that took place in his life, but asks the court to consider the difficult situation he has been through. He became involved in the use of drugs and then mainly in acquiring drugs and using them and having them for his own use. And, because of that he became acquainted and got to know people in that business, and other people who were using, who he would use drugs with, principally marijuana, your Honor. He recognizes that because of his depression and other things he got involved in this and stayed involved in the use of alcohol and marijuana that he should not have done. And, that he began associating with

people that did not have his best interests in mind and could care less whether or not he succeeded in life, only whether or not they could sell him drugs and obtain drugs from him. Your Honor, that was his down fall in life and it has caused him extreme difficulties to the point where he was a—he and his family had taken a vacation to Arizona, and while down there visiting friends, those friends introduced him to some very hardened people who were involved in the drug business and he became involved in the action that's presented to the court in this report for which he was sentenced in Arizona. *There was a drug transaction taking place. It was not his money or his transaction,* but he was invited to watch that and be there and when money was paid for drugs and the drugs were not obtained, the people with him actually pulled out firearms and held some people as hostages in an attempt to obtain either their money back or their drugs. When he realized that that situation was getting totally out of hand, he attempted to leave, but at that time the police were involved and he was arrested. Further, your Honor, he was arrested later here in Idaho on the same type of problems he had been having in his life and that is the abuse and use of marijuana, which has caused him tremendous difficulty in his life. Beyond these drug problems, your Honor, my client has sought to be a productive member of society. He purchased a mobile home. He had motor vehicles. He was making his payments. He was doing everything everybody else was doing in life until these problems came along. Now, because of these problems that he entered into of his own free will and choice, he's suffered a great loss. He lost his home that was repossessed. He lost motor vehicles that were repossessed. He's been separated from his family and has lost his family as he knew it and a chance to be with his children and raise his family. He realizes that he has caused this himself; that he has caused a great deal of harm to his wife, children and the other people who mean a great deal to him in his life. *He expresses a great deal of remorse over his conduct and the harm that that has caused for other people.* And, the harm he's caused to this community and this court in having to deal with these problems. Your Honor, if losing these things has any benefit, it has helped my client to get away from drugs, which he has not had anything to do with since his arrest. That he can stay drug free and alcohol free, and that he can get on with his life. Because of his industrial accident he will no longer be able to return to a hard physical type work in his life. But *while he has been in prison in Arizona, because of the special arrangements they have there with Pima College, where the prison is located, he's actually attending college and receiving college credits and has nine credits already. He is excelling in his studies and he is doing better than the other prisoners in the classes that he's taking.* The area which he elected to study was computer maintenance and repair, which he believes will provide him a life long opportunity to obtain honorable employment because of the future in that area. He's doing well in those courses. In the initial course completed there he received an A, 98 percent, which was the best in the course out of those, whether they be criminals from the penitentiary system or from the local community there. He is working hard to get himself educated and to complete a college education so that when he gets out he can be a productive member of society. Your Honor, he could have chosen, while being in prison, to simply join some of the work details where he would have been paid an hourly wage for the work that he would have done and he would have pocket money to buy cigarettes and the other things that make prisoner's lives comfortable. But instead he's getting himself educated and then picks up any additional work he can on the side. But he spends seven hours a day in study work and preparation for class and three hours actually in class each day in trying to improve his life. And, they have courses that he will constantly be in until he completes the program down there. Your Honor, because of his crime there and their considerations of the crime here, he received a

sentence under a sentencing guideline system that Arizona has.

The first opportunity he has, that he would be eligible for parole would be in July—on July 15th, 1993. Considering the fact that he has been incarcerated there since May 16th, 1991, he believes that's a tremendous amount of time and he has realized the price he is paying for his conduct, but he does see the benefit that can come through taking advantage of the opportunities that are there. At this particular time, based on their earned release system, he would not be released until July 7th, 1994. But as he earns additional credits, it will work down to that date of July 15th, 1993, when he could be placed on probation. Your Honor, my client has learned to live within the rules of society. That he cannot disobey the law and disregard the law. It is strange that in his own personal life he sought to teach his family and his children to respect law enforcement officers and respect what they do. One of his young sons, who he had a chance to see here today, drew him a picture of a law enforcement badge and wishes his father could one day become a police officer. He knows that because of his past conduct that that's not possible, but he hopes that his family would still respect the law enforcement officers and the fact that he recognizes that they were actually helping him in doing their duty in controlling the laws that he needs to obey. Your Honor, my client has stayed off drugs since the report that we have submitted shows. He is not using drugs. He is not using alcohol. He is trying to better his life and make up for the loss he has caused.

Your Honor, my client has cooperated at all the stages in this matter. He cooperated with the local law enforcement officers when he was arrested, in even taking them to his residence and consenting to a search and showing them exactly what he had and cooperating fully there. When asked to do so, by the Department of Narcotics for the State of Idaho, he cooperated in the State of Idaho, explaining everything he knew in this area. They also arranged for him to travel to Wyoming to the areas where he had been working on oil rigs and cooperated with the state law enforcement in the State of Wyoming. He also went on to Arizona and cooperated there. Your Honor, these people in the Department of Law Enforcement had no right to, but they did make certain promises to my client because he helped them so much. And, my client now realizes that they did not have any right to bind this court, and they were the ones who were making the promises of leniency for his wife because of the tremendous contribution and help he was providing to them. Your Honor, when my client filed a motion for speedy trial, that was not to cause any difficulty for this court and he would like the court to understand that. I understand the state was experiencing the same problems we were in that we were trying to get Mr. Newman back here to Idaho to complete these matters, and the State of Arizona was constantly losing the paper work, or shuffling it from one office to another. We were simply trying to keep the pressure on Arizona so that they would allow him to be transported back here to resolve these matters so that he could get on with a finality in these matters. Your Honor, my client has a lot to offer. He can become a productive member of society. He does not have that opportunity now, because he will be incarcerated for some time to come, but what *we would ask this court to do, is impose a sentence*, whether it be partially fixed and indeterminate, *that would allow my client to reach the goal of probation at the time he would be released from custody in Arizona.* That is the time when they would have him best prepared to succeed on probation. When he would have his degree and where they would use their job placement services to place him somewhere in the United States in a job where he could use his new training. He's been told it would likely not be in either Arizona or Idaho, but they would place him somewhere in the country and then transfer his probation to the place where they were able to obtain employment for him. Your Honor, we would ask the sentence imposed by this court, first give my client credit for the incarceration

time he has served since May 16th, but also that the court run this sentence concurrent to the Arizona sentence and on each count concurrent. We believe that my client will understand that even though he would be serving time in prison somewhere else, that it's because of his conduct; it's because of the conduct here that impacted his sentence in Arizona and that he will be paying a price to society no matter where it is he is spending his time.

Thank you, your Honor. My client would now like to address the court.

THE COURT: Okay, Mr. Newman.

MR. NEWMAN: Your Honor, I'd like to apologize to your Honor, Clyde Nelson and the rest of the judicial system for the trouble I've put them through to bring me back here to prosecute me. And, I know that wouldn't have happened, if I hadn't broke the law and committed being a criminal. I'm trying to get into AA right at the moment. I haven't had no drugs or alcohol. I'm staying away from it. I realize that they have ruined my family life. They've ruined my freedom. I'm trying to better myself. I'm studying. As Mr. Murray said, I'm studying to pass this school. I'm at Pima Community College. Other than devote myself to the books, I'm trying to reform myself so I don't end up back in jail again. I don't want to be back in your jail again or any other jail. I would just, like I said, I apologize for the inconvenience I've put you to.

THE COURT: Anything else, Mr. Murray?

MR. MURRAY: No, your Honor.

THE COURT: Thank you. You may be seated. Mr. Nelson.

MR. NELSON: Thank you, your Honor. As to the two attachments, which the Defendant has submitted. I'm not sure I read those correctly, your Honor. But one, his education, it looks like he's dropped out of his courses. It does indicate, it seems like to me he dropped them. Of course, maybe the Defendant could explain that. But in any case, your Honor, I think, as the court

can take knowledge of Tina Newman's own sentencing, Mr. Newman has been engaged in the conduct of dealing with drugs for a period of ten years. And, that's been his—basically his income for around ten years. He's a drug dealer and that's what he does for a living. That's how he buys his 1987 Pontiac Fire Bird or whatever it was. How he buys his vans. How he buys his mobile homes and that's what he does for a living. He's a drug dealer. And, he says he was down, according to the pre-sentence report from Arizona, that he was down in Arizona on vacation with his family. I think Mrs. Newman often accompanied and was aware of Mr. Newman's drug dealings, but really what he was down there was for a $21,-000.00 cocaine transaction in Arizona, of which he apparently got stiffed, along with his accomplices, when they gave the $21,-000.00 for the cocaine. I assume that he was down there on vacation from this area, but he was intending to bring that cocaine back into this area, I don't know. Only Mr. Newman can tell us what he was doing there to obtain that much cocaine. But anyway, they did attempt to obtain the cocaine in Arizona and then when they were given some wall board, I guess, as the cocaine. They then held their victims, the people who had given them the product, hostage, at gun point. I believe a 357 magnum pistol, a .45 caliber pistol were confiscated and forfeited to the State of Arizona. And, Mr. Newman—therefore indicated that Mr. Newman was actively involved in this aggravated assault down there, which is purely a drug transaction, which arose—which his charges arose out of in Arizona. As I recall, Mr. Newman was heading back to Arizona because he thought they were going to drop charges on him and that he was just going to beat the deal, and unfortunately for Mr. Newman they put him in the pen. The fact that Mr. Newman says he's learned his lesson, basically, your Honor, we would take—ask the court to take that with a grain of salt. He not only, after he gets charged in Arizona with these—with kidnapping charges, which were later reduced to aggravated assault charges, does Mr. Newman come up to the State of Idaho, and then engages

in further drug transactions. He purchased a pound of marijuana and was in the process of commencing to start to deal those products, and in fact, as is shown under Count I, he sold some of that marijuana to a Roy Worth. And, he had another, almost a pound left in his house, which he was obviously going to distribute. That's Count II. And, he did this for the purpose of making money for the purpose of buying his nice cars, the purpose of having a good life. And, was going to sell the rest of the marijuana. He's a drug dealer. He causes a lot of harm to our society, has caused a lot of harm to our society, thus far. And, your Honor, we'd ask that this offense not be treated lightly. The Defendant—we'd been advised, that the Defendant will be released from the State of Arizona after a period of two years. We think that that sentence would be excessively light. In looking at the Idaho charges, when you consider the same with the Arizona drug transaction charges. Those charges arose out of drug transactions. Your Honor, we ask and request of the court—and when they say that Mr. Newman voluntarily showed them where everything was, your Honor, in this particular case the police had him cold. I mean, he was locked in. He knew that the search was going to be conducted, and I think as I recall, at that time the search warrant had been obtained. And, so Mr. Newman very graciously showed us exactly where the pound of marijuana was. In any case, your Honor, the State would request in this particular case, and the state truly feels these are very serious charges, no agreement has ever been made with the Defendant, and I think the Defendant stipulates that's what the State would recommend. We always advised the defense that we thought these were very serious charges. We would ask for a fixed sentence, your Honor, of five years on the first—Count I. And, that no credit for time served be given for the time already served in Arizona. That is not related to this charge and credit for time served on the Arizona charge cannot be given on the Idaho charges on that particular case. Once this sentence is imposed,

the court is allowed, I believe, to allow the time served in Arizona after that time to run concurrently with these charges, if it so desires, but not the time prior to the actual sentencing in Idaho. As to Count II, your Honor, which we think is the second most serious count in this particular case. In the first case he sold some marijuana. The second count he's holding further marijuana for distribution to the people of this community of this area. We would ask that he also receive a fixed sentence on that particular case of five years, running consecutively with the other charge. As to Counts II, III and IV, your Honor, we'd ask that those be concurrent five year charges to run concurrently with the other two sentences. Thank you.

THE COURT: Thank you. Mr. Murray, in conclusion.

MR. MURRAY: Your Honor, if I could address those points that were raised by the State. First, the exhibit that we submitted is Mr. Newman's class plan to graduate him in this field of computer repair. All the courses that they have outlined for him indicates the ones he has completed at the top as he works down through those courses. Right now he's in the middle of a course that he will need to complete upon return and then will continue getting that education, as is outlined there. Your Honor, I do not feel that the pre-sentence report before this court supports in anyway the allegations of the State that my client's income came from the sale of drugs. It's very clear from his history and what took place, that he was a user of drugs and an extensive user of drugs, and that was his principal involvement in it, was to obtain them for his own use and for those he associated with, either them providing them for him or him for them, and that's what we're dealing with here. It's indicated in the report that if it were different, the detectives from both the Idaho probation office and narcotics detectives, would have known that he was a major provider or importer of drugs into this area, and that is not indicated and there's no record before the court of that. My client's life style does not support that he had any

tremendous amount of income. They struggled to pay their bills and to support themselves and get by in light of his injuries and his disability of what he was receiving. His wife was even working as a waitress to help the family meet their ends and their obligations. Your Honor, the State brings up the guns that were forfeited in Arizona. Yes, there were guns forfeited in Arizona. We indicated that guns were used there. They were not my client's guns and he did not have the guns there, but the other individuals did have, and by being there with them took full responsibility just like they did in Arizona. And, he's paying that price for that. Your Honor, my client realizes that it was his drug use that has got him into this point. That his addiction to that and his use of drugs and that that was wrong and that what he did was totally wrong. We ask the court to let him rehabilitate himself. Let him have a future. In looking at the two years of incarceration that he is facing already, that is a tremendous amount of time in anyone's life. It's a tremendous amount of time and is a harsh punishment in looking at what he's done and what there was in his life that was tying him to that. Your Honor, we do not feel this court is limited in anyway in imposing the sentence and doing it as we have requested of the court. Thank you.

THE COURT: Thank you, counsel. Does either counsel have cause to show why sentencing should not take place at this time? Mr. Murray?

MR. MURRAY: No, your Honor.

THE COURT: Mr.—

MR. NELSON: No, your Honor.

THE COURT: Very well. Mr. Newman, if you would stand. Mr. Newman, I have thoroughly reviewed the file I have before me. The pre-sentence report from the State of Arizona, which was furnished to me with the attachments there. I've read the additions that you've submitted today. I have listened to counsel for both sides. Mr. Newman, it occurs to me in conclusion of all this, that you were at the time of your arrest a dealer in controlled substances, as well as a user of controlled substances. That this had been going on over a period of sometime. That this was not the first time that you had been in possession or had distributed controlled substances in some manner. So, I don't believe that this is a first time offense for you. However, I am sentencing only on the offenses which have been charged and to which you have plead guilty. The citizens of this state don't take kindly to people that deal in drugs, be it marijuana or otherwise. You having plead guilty to the four counts of which you were charged, the court finds that you are guilty of each of those charges. It's the sentence of this court on Count I, that of delivery of a controlled substance; that you be sentenced to be imprisoned in the Idaho State Penitentiary for a fixed period of five years. Additionally, I impose a fine of $10,000.00. As to Count II, that of possession with intent to deliver, you are sentenced to a fixed term of three years, together with an indeterminate period of two years for a total of five years. As to Count III, you are sentenced to a fixed term of three years, plus an indeterminate period of two years for a total of five years. As to Count IV, you are sentenced to a fixed term of one year, plus an indeterminate period of two years for a total of three. Each of these sentences will run concurrently with each other. They will run concurrently with the sentence you are now serving in the State of Arizona commencing today. You will not receive credit for time spent on your sentence in the State of Arizona. You will receive credit for any time held by the State of Idaho, County of Caribou in direct connection with the charges to which you have been sentenced. You are at this time remanded to the custody of the Caribou County Sheriff, by him to be delivered to the State of Arizona—returned to 'the State of Arizona—

MR. NELSON: That would be correct, your Honor.

THE COURT: —for completion of your sentence there and then at the completion

of that sentence to be delivered back to the Department of Corrections of the State of Idaho to complete your sentence imposed this date. Any questions, counsel?

MR. MURRAY: No, your Honor.

THE COURT: Mr. Nelson?

MR. NELSON: No, your Honor, only as to—I assume the court will advise him of his right to appeal.

THE COURT: Yes, I will. In conclusion I wish to advise you, Mr. Newman, that you have the right to appeal from this judgment and sentence of this court, notwithstanding the fact you have pled guilty to the charges on which you have been found guilty and sentenced. This has to be done in writing within 42 days. You're entitled to have an attorney represent you on such an appeal. If you cannot afford one, one will be afforded to you by the State of Idaho. If counsel will return their copies of the pre-sentence report to the court, they will be cared for, along with the attachments lodged today in the manner prescribed by statute.

Reporter's Transcript on Appeal, 1–31 (emphasis added).