896 P.2d 962

**The STATE of Idaho, Plaintiff–Respondent,**

v.

**Henry Clyde McAWAY, Defendant–Appellant.**

No. 20682.

Supreme Court of Idaho,
Boise, December 1994 Term.

May 23, 1995.

Alan E. Trimming, Ada County Public Defender, Richard D. Toothman, Deputy Public Defender (argued), Boise, for appellant.

Alan G. Lance, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen. (argued), Boise, for respondent.

SILAK, Justice.

This is an appeal from a conviction of two counts of lewd conduct with minor children, specifically, the appellant's stepdaughter and daughter. Appellant also appeals from two concurrent sentences of twenty years deter-

minate with an indeterminate term of up to life. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

In 1988, Candi Crill was a single mother living in Boise, Idaho with her two-year-old daughter, B. She met the appellant Henry McAway (McAway) through acquaintances, and when McAway moved to Boise from California in June 1988 and needed a place to live, Ms. Crill invited him to stay with her. A relationship began, and shortly thereafter, Ms. Crill became pregnant. Crill and McAway were married in the fall of 1988. Their daughter, K., was born in March 1989.

At the time of his marriage to Crill, McAway was on medication for a psychiatric problem which he told Crill was manic depression. He did not work and stayed home with B. In August 1988, McAway began to show symptoms of mental illness. He was thereafter committed to State Hospital South and diagnosed as schizophrenic. After his release in October 1988, he was referred to mental health services for continued treatment and monitoring of his medication. He exhibited no signs of serious mental health problems until March 1990.

In retrospect, Crill was concerned about B.'s reaction to McAway. Crill and her mother both noticed that B. did not want to be left alone with McAway. Crill noticed that B. became withdrawn, angry and verbally abusive. B. also became compulsive about brushing her teeth and washing her hands.

Crill also noticed that K. had begun to experience difficulties. At first she grew normally, but she stopped growing at about three or four months, despite the fact that she wanted to nurse constantly. Crill also noticed spotting of blood in K.'s diapers.

In February 1990, McAway stopped taking his medication. One day in April, he took K. into a back room and told Crill that he was going to take K. with him to heaven. The police were called and were able to talk McAway into handing over K. He was later placed at State Hospital South.

In May 1990, B. told her mother McAway had touched her in a way she did not like, and had also touched K. and that he had forced her to touch K. Crill then brought her daughters to be examined by a doctor at the CARES (Children at Risk Evaluation Services) unit in Boise. The doctors opined that both girls had been sexually abused.

During B.'s visit to the CARES unit, she was also interviewed by a registered nurse with extensive training and experience in interviewing children. The interview was videotaped. Although B. did not give a detailed account of the sexual abuse, her statements indicated that McAway had been the perpetrator of the abuse.

In the months that followed, B.'s behavior became alarming: she attempted self-mutilation and showed suicidal tendencies. In April 1991, B.'s psychological condition and behavior had deteriorated to the point that she was hospitalized for five weeks.

In June 1991, McAway was charged by indictment with two counts of lewd conduct with minor children pursuant to I.C. § 18–1508. The case did not go to trial until May 1993 due to protracted proceedings concerning McAway's competence to stand trial. During the trial, B., then seven years old, testified that McAway sexually abused her. On cross-examination, defense counsel inquired as to whether her mother had instructed her to accuse McAway. B. testified in the negative. The state then sought to have the CARES videotape introduced into evidence. The tape was admitted over the objections of defense counsel.

The jury found McAway guilty of both counts of lewd conduct with minor children, and he was thereafter sentenced to two concurrent determinate periods of twenty years with indeterminate terms of up to life in prison. McAway appeals both his conviction and his sentence.

## II.

### ISSUES ON APPEAL

1. Whether the district court acted properly in admitting the videotape of the CARES interview of a four year old

58

child named as the victim of lewd conduct.

(a) Whether the district court properly exercised its discretion in ruling that the probative value of the exhibit was not substantially outweighed by the danger of unfair prejudice, and whether it was otherwise admissible under I.R.E. 403.

(b) Whether the admission of the videotape was consistent with McAway's right of confrontation, where the child testified and was cross-examined at trial.

(c) Whether the admission of the videotape was consistent with McAway's right to due process.

2. Whether the district court properly exercised its discretion in sentencing McAway to serve two concurrent terms of 20 years to life for two counts of lewd conduct.

### III.

### ANALYSIS

A. **THE DISTRICT COURT PROPERLY ADMITTED THE VIDEOTAPE OF THE CARES INTERVIEW OF McAWAY'S STEPDAUGHTER, THE FOUR–YEAR–OLD CHILD NAMED AS ONE OF THE VICTIMS OF HIS LEWD CONDUCT.**

1. *The District Court Properly Exercised Its Discretion In Ruling That The Probative Value Of The Exhibit Was Not Substantially Outweighed By The Danger Of Unfair Prejudice, And That It Was Otherwise Admissible Under I.R.E. 403.*

McAway argues that admission of the videotape was in violation of I.R.E. 403 because the probative value of the tape was outweighed by its undue prejudice. McAway claims that admission of the tape was an abuse of the hearsay rule because it was improperly used to bolster the credibility of the witness. We disagree.

Rule 403 of the Idaho Rules of Evidence provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The determination of whether relevant evidence is substantially outweighed by the other considerations set forth in I.R.E. 403 is within the discretion of the trial court. *State v. Winn*, 121 Idaho 850, 853, 828 P.2d 879, 882 (1992); *State v. Enno*, 119 Idaho 392, 405, 807 P.2d 610, 623 (1991). We hold that the district court properly exercised its discretion in admitting the CARES videotape of the interview with B. for several reasons.

First, pursuant to I.R.E. 403, the tape was relevant evidence as to the identity of the perpetrator of the sexual abuse. Secondly, there was no unfair prejudice to McAway as B. did not provide any details of the sexual abuse, but referred to the abuse only indirectly. Furthermore, the record indicates that CARES interviews must follow very specific guidelines, *e.g.*, the interviewer is unaware of the nature and specifics of the allegations at the time of the interview; the interviewer attempts to obtain the information through the use of open-ended, non-leading questions; and the interviews are videotaped, with both the interviewer and the subject visible throughout the interview. Thirdly, the admission of the tape did not mislead the jury or cause any undue delay. Finally, with respect to the needless presentation of cumulative evidence element, we hold that this evidence was not needless as it was a prior consistent statement pursuant to I.R.E. 801(d)(1)(B). This rule provides:

(d) Statements which are not hearsay. A statement is not hearsay if—

(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is … (B) consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive,. . . .

The circumstances of this case are unique. The sexual abuse of B. took place over a two

year period when B. was between the ages of two and four. However, due to questions regarding McAway's competency, the case was not tried until three years later, when B. was seven. At the trial, B. testified as to the abuse that had earlier taken place. On cross-examination, McAway attempted to elicit testimony which would support his claim that B.'s mother spent the three years before the trial programming her to say that McAway had abused her. The state then sought to introduce the videotape as a prior consistent statement to rebut McAway's charge of recent fabrication pursuant to I.R.E. 801(d)(1)(B). We hold that the videotape was admissible for this purpose. The most effective way for the jury to evaluate a claim of recent fabrication was to view B.'s conversation with a neutral interviewer, in her mother's absence, three years previously, very near to the time of the initial disclosure. The jury was able to see not only that B. named McAway as her abuser at that time, but that she did so spontaneously and without prompting. Thus, the videotape had substantial probative value on the issue of whether there had been recent fabrication or improper influence. Weighed against this, there was little danger of unfair prejudice.

2. *The Admission Of The Videotape Was Consistent With McAway's Right of Confrontation, Where The Child Testified And Was Cross–Examined At Trial.*

McAway argues that even if the videotape was admissible under I.R.E. 803(24), the catchall exception to the hearsay rule, its admission violated the Confrontation Clause of the Sixth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, because the videotape was simply a device to present B.'s testimony to the jury without allowing the defense the right of contemporaneous cross-examination. In this case, McAway argues, noncontemporaneous cross-examination could not satisfy the constitutional requirements. We disagree.

 In support of his argument, McAway relies on *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), a case factually similar to the one at bar. In *Wright*, the defendant was convicted of two counts of lewd conduct with a minor, specifically her two daughters, ages 5½ and 2½. At the trial, it was agreed that the younger daughter was not capable of communicating with the jury, and therefore, she did not testify. However, the court did admit, under Idaho's residual hearsay exception, certain statements she made to a pediatrician having extensive experience in child abuse cases. The doctor testified that she had reluctantly answered questions about her abuse. Wright was thereafter convicted. On appeal to this Court, we reversed, finding that the admission of the doctor's testimony violated Wright's rights under the Confrontation Clause. *See State v. Wright*, 116 Idaho 382, 775 P.2d 1224 (1989), in which we held that the child's statements did not fall within a traditional hearsay exception and lacked "particularized guarantees of trustworthiness" because the doctor had conducted the interview without procedural safeguards, *i.e.*, he failed to videotape the interview, asked leading questions, and had a preconceived idea of what the child should be disclosing. 116 Idaho at 385, 775 P.2d at 1227. "Particularized guarantees of trustworthiness" is a test that comes into play when the admissibility of evidence concerns a hearsay declarant who is not present for cross-examination at trial. The only way in which such evidence will be admissible is upon a showing by the prosecution of absolute necessity, a high degree of trustworthiness, and a total absence of motive to falsify. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). In *Wright*, the United States Supreme Court affirmed our decision except to the extent that the procedural requirements we identified were regarded as conditions precedent to the admission of child hearsay statements in child sexual abuse cases. *Idaho v. Wright*, 497 U.S. at 818, 110 S.Ct. at 3148.

This case is distinguishable from the present case for two reasons. First, unlike in *Wright*, both participants to the CARES interview, B. and the registered nurse, did testify at the trial. Both parties were subject to extensive cross-examination. In *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930,

26 L.Ed.2d 489 (1970), the United States Supreme Court held that when a declarant of an out-of-court statement is subject to cross-examination before the trier of fact, the defendant's rights under the Confrontation Clause have not been violated:

It may be true that a jury would be in a better position to evaluate the truth of the prior statement if it could somehow be whisked magically back in time to witness a gruelling cross-examination of the declarant as he first gives his statement. But the question as we see it must be not whether one can somehow imagine the jury in "a better position," but whether subsequent cross-examination at the defendant's trial will still afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement. On that issue, neither evidence nor reason convinces us that contemporaneous cross-examination before the ultimate trier of fact is so much more effective than subsequent examination that it must be made the touchstone of the Confrontation Clause.

399 U.S. at 160–61, 90 S.Ct. at 1936. Thus, even though there was no contemporaneous cross-examination with the statements made by B. in the videotape (which would have been a practical impossibility), we hold that McAway's constitutional rights under the Confrontation Clause were fully satisfied.

■ Another reason we find McAway's constitutional rights under the Confrontation Clause not to have been violated is because the videotape was not hearsay, nor was it admitted into evidence under any exception to the hearsay rule. Rather, the tape was admissible under I.R.E. 801(d)(1)(B) as a prior consistent statement to rebut McAway's assertion of recent fabrication, i.e., that B.'s mother had programmed B. to testify that McAway had committed the abuse. As we stated above, in order for the jury to evaluate McAway's claim, the most effective way would be for the jury to view B.'s conversation with a neutral interviewer, out of the presence of her mother, very close to the time she first disclosed the abuse. Thus, a showing of "particularized guarantees of trustworthiness" pursuant to *Ohio v. Roberts,*

*supra,* is not necessary as the out-of-court statements of B. are not hearsay.

3. *McAway Did Not Raise a Due Process Objection to the Admission of the CARES Videotape Before the District Court and is Therefore Barred From Doing So on This Appeal.*

McAway argues that the admission of the CARES videotape violated his right to due process because it improperly bolstered an unimpeached witness's testimony, and because it allowed the state to present its case-in-chief twice. We decline to reach the merits of McAway's argument because the record indicates that he failed to preserve this due process issue below.

■ Constitutional issues generally will not be considered by this Court if raised for the first time on appeal. *Buffington v. Potlatch Corp.,* 125 Idaho 837, 840, 875 P.2d 934, 937 (1994); *George W. Watkins Family v. Messenger,* 118 Idaho 537, 541, 797 P.2d 1385, 1389 (1990). Additionally, as a general rule, this Court will not consider an alleged error on appeal in the absence of a timely objection to the alleged error at trial unless it is fundamental error. *State v. Sarabia,* 125 Idaho 815, 818, 875 P.2d 227, 230 (1994). Fundamental error has been defined as follows:

Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law.

125 Idaho at 818, 875 P.2d at 230, *quoting State v. Knowlton,* 123 Idaho 916, 918, 854 P.2d 259, 261 (1993).

■ The discretion to admit the CARES videotape is vested in the trial court. Even if the district court had abused its discretion in admitting the videotape, the error would not have been fundamental because, "[a]n abuse of discretion in admitting evidence is a trial error and does not go to

the foundation of the case or take from the defendant a right which was essential to his defense." *State v. Higgins*, 122 Idaho 590, 599, 836 P.2d 536, 545 (1992). Furthermore, McAway's argument appears to amount to little more than the contention that the state presented too much evidence for his liking. As we stated above, the statements made by B. in the CARES interview had specific probative value since they rebutted one of the central defense contentions, *i.e.*, that B.'s testimony at trial was fabricated. Thus, the evidence of those statements was not simply cumulative.

## B. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN SENTENCING McAWAY TO SERVE CONCURRENT TERMS OF TWENTY YEARS TO LIFE FOR HIS CONVICTIONS OF TWO COUNTS OF LEWD CONDUCT WITH A MINOR.

Counsel for McAway argues that McAway is, and will probably continue to be seriously mentally ill, and that his sentence is excessive. Counsel argues that McAway should be placed on probation for the rest of his life. We disagree.

 Sentencing is a discretionary function of the trial court. Where the sentence imposed is legal, the defendant has the burden of proving that it is unreasonable, and thus a clear abuse of discretion. *State v. Broadhead*, 120 Idaho 141, 814 P.2d 401 (1991). To determine whether a trial court has abused its sentencing discretion, this Court conducts an independent review of the record, focusing on the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Newman*, 124 Idaho 415, 418, 860 P.2d 618, 621 (1993); *Broadhead*, 120 Idaho at 143, 814 P.2d at 403. This Court's task in reviewing a sentence is to determine whether, considering (1) the protection of society, (2) deterrence of the defendant and others, (3) the possibility of the defendant's rehabilitation, and (4) punishment or retribution for the defendant, the sentence is excessive under any reasonable view of the facts. *Newman*, 124 Idaho at 418, 860 P.2d at 621. Further, we will not substitute our view for that of the sentencing judge if the situation is such that reasonable minds may differ. *Id.* We consider the fixed portion of a sentence imposed under the Unified Sentencing Act to be the term of confinement for the purpose of appellate review. *Id.; Broadhead*, 120 Idaho at 146, 814 P.2d at 406. Thus, we must determine whether McAway's sentences, which are two concurrent periods of twenty years' confinement, are unduly harsh in light of his character, the nature of his offense, and the goals of sentencing, *i.e.*, protection of society, deterrence of future crimes, rehabilitation and retribution. *Newman*, 124 Idaho at 418, 860 P.2d at 621.

 First, we hold that the sentence imposed by the district court is legal. The sentence of twenty years to life imposed here is within the maximum term of life imprisonment for lewd conduct pursuant to I.C. § 18–1508. Secondly, after an independent review of the record, we hold that the district court did.not abuse its discretion in imposing this sentence, and we do not find it to be excessive. The nature of McAway's acts make this an exceptionally aggravated case of lewd conduct. He carried out repeated acts of sexual molestation, including sexual intercourse, upon his stepdaughter B. while she was between the ages of two and four. He performed sexual acts, including some kind of vaginal penetration, upon his natural daughter K., from the time she was a few months old until she was little more than one year old. McAway also compelled B. to touch her little sister's vaginal area.

The effects of these acts were both horrifying and predictable. B. suffered serious psychological difficulties. She displayed self-destructive and suicidal behavior. She threatened to kill herself; she ran in front of cars; she used a knife upon herself and said she was going to cut out her vagina "so he wouldn't hurt her again." According to the presentence report, B.'s mother reported her "trying to pe[e]l the skin off her face and cutting her vagina." When medication failed to control B.'s behavior, she had to be hospitalized for five weeks until she was stabilized. K. could not express her distress verbally, but she nearly stopped gaining weight from

**62**

the time she was six months old until McAway was removed from her home. The exact nature of the effect that McAway's actions will have on B. and K. in the years to come cannot be determined, but they undoubtedly will experience serious consequences for the rest of their lives.

In imposing sentence, the district court emphasized the need to protect society. The court particularly noted the need to keep McAway confined until his victims were adults, so that they could develop throughout their childhood without the fear that he would jeopardize them once more. Under the circumstances, we hold that these were legitimate concerns considering the paramount goal of the protection of society, and that therefore, the sentence was reasonable.

## IV.

## CONCLUSION

We hold that the district court properly admitted the CARES videotape under I.R.E. 403. The tape was relevant evidence as to the identity of the perpetrator of the sexual abuse. Furthermore, this evidence was not hearsay, but rather was admitted as a prior consistent statement under I.R.E. 801(d)(1)(B) to rehabilitate B. after she was cross-examined as to whether her mother had improperly influenced her to name McAway as the perpetrator.

We also hold that the admission of the videotape did not violate McAway's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Both participants to the CARES interview testified at trial and both were subject to extensive cross-examination.

We further hold that because McAway did not raise a due process objection to the admission of the videotape at trial, he is barred from doing so on this appeal.

Finally, we hold that McAway's sentence is not excessive considering the paramount goal of protecting society. Thus, the district court did not abuse its discretion in imposing the two concurrent sentences of twenty years to life.

Accordingly, the judgment of the district court is affirmed.

McDEVITT, C.J., JOHNSON and TROUT, JJ., and REINHARDT, J. Pro Tem., concur.